UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| KEN WIWA, *et al.*,<br><br>　　　　　　　　　　　　　　　Plaintiffs,<br><br>　　　　　　　– against –<br><br>ROYAL DUTCH PETROLEUM COMPANY, *et al.*,<br><br>　　　　　　　　　　　　　　　Defendants. | 96 Civ. 8386 (KMW)(HBP) |
| KEN WIWA, *et al.*,<br><br>　　　　　　　　　　　　　　　Plaintiffs,<br><br>　　　　　　　– against –<br><br>BRIAN ANDERSON,<br><br>　　　　　　　　　　　　　　　Defendant. | 01 Civ. 1909 (KMW)(HBP) |

**JOINT PROPOSED JURY INSTRUCTIONS**

Proposed Instructions .......................................................................................... 3

Structure of Jury Instructions ............................................................................. 5

    Plaintiffs' General Arguments and Objections ......................................... 5

    Defendants' Response to Plaintiffs' Statement Regarding Structure of
        Instructions ................................................................................... 7

Choice of Law for Non-Federal Claims ............................................................ 11

    Plaintiffs' Statement .............................................................................. 11

    Defendants' Statement .......................................................................... 25

Plaintiffs' General Objections and Reservations .............................................. 33

    Plaintiffs' Statement.............................................................................. 33

    Defendants' Response ........................................................................... 35

Defendants' Statement of Reservations and Objections .................................... 38

    Defendants' Statement .......................................................................... 38

    Plaintiffs' Response .............................................................................. 52

## PROPOSED INSTRUCTIONS

The parties are submitting the proposed instructions in several pieces.  In addition to the specific objections set forth with the instructions, the parties also make certain general arguments, reservations and objections as set forth below.

Except for the parties' differences as to the structure of the instructions for Alien Tort Statute claims, non-federal claims, and theories of liability, as set forth below, the parties agree that the instructions should be presented in the following order.

Exhibit A contains the parties' proposed General Instructions.  Unless otherwise indicated, the instructions in this section have been agreed to by the parties.

Exhibit B contains plaintiffs' proposed instructions for Alien Tort Statute claims, non-federal (state law) claims, theories of liability, and defendants' objections thereto.  Because defendants' instructions on these topics are organized differently, they are not included in the same document.  In addition to the specific objections, defendants also object to plaintiffs' ATS law instructions as set forth below in defendants' Statement of Reservations and Objections.  (*See infra* Part 3.I, 3.II.)

Exhibit C contains defendants' proposed Instructions for Violations of Norms of International Law.  This set of instructions corresponds to some of plaintiffs' instructions in Exhibit B.

Exhibit D contains defendants' proposed Instructions for Violations of Nigerian Law.  This set of instructions corresponds to some of plaintiffs' instructions in Exhibit B.

Exhibit E contains the parties' proposed Instructions Regarding General Privileges and Duties and Miscellaneous Matters Under Nigerian Law.

Exhibit F contains the parties' proposed RICO instructions.  Unless otherwise indicated, the instructions in this section have been agreed to by the parties.  In addition to the specific objections contained in this section, defendants also object to the RICO instructions in their entirety as set forth below in defendants' Statement of Reservations and Objections.  (*See infra* Part 3.III.)

Exhibit G contains the parties' proposed damages instructions.  Unless otherwise indicated, the instructions in this section have been agreed to by the parties.  In addition to the specific objections contained in this section, defendants also object to certain damages instructions as set forth below in defendants' Statement of Reservations and Objections.  (*See infra* Part 3.IV.)

Exhibit H contains the parties' proposed general instructions for use at the close of all instructions.

## STRUCTURE OF JURY INSTRUCTIONS

### PLAINTIFFS' GENERAL ARGUMENTS AND OBJECTIONS

The parties fundamentally disagree about the structure of the jury instructions. Generally, plaintiffs' approach is to separate out each substantive claim, such as torture or battery, followed by instructions concerning SPDC's responsibility for the acts of the Nigerian military, followed by instructions concerning the defendants' liability for SPDC. Defendants' approach is to follow each instructive on the substantive tort with instructions for SPDC's responsibility and defendants' liability.

Defendants have not been willing to split up their instructions to respond directly to plaintiffs' instructions, which is why these instructions are presented in two entirely separate volumes. Plaintiffs would have preferred that each party's instructions for each claim and theory of liability be presented back-to-back. Defendants, for their part, were insistent on maintaining their structure. This basic difference in approach has presented an easy comparison between many of the instructions in this case.

Plaintiffs believe that their structure is more intuitive and efficient than defendants' structure. Given the number of claims and theories of liability at issue in this case, defendants' approach results in needless repetition of numerous instructions, resulting in a massive tome of jury instructions (and many hours of Court time if all the instructions are read). Even with just a few claims and theories of liability, defendants' approach is far more cumbersome than plaintiffs.' Consider, for example, three substantive claims (extrajudicial execution, torture, battery), four theories of SPDC's responsibility (aiding and abetting, conspiracy, joint venture, ratification), and three theories of defendants' liability (aiding and abetting, agency, conspiracy).

| Plaintiffs' approach | Defendants' approach |
|---|---|
| <u>Elements of claims</u><br>• Elements of military committing extrajudicial execution<br>• Elements of military committing torture<br>• Elements of military committing battery<br><br><u>Theories of SPDC responsibility</u><br>• SPDC's responsibility for aiding and abetting military<br>• SPDC's responsibility for conspiring with military<br>• SPDC's joint venture responsibility for acts of military<br>• SPDC's responsibility for ratifying military's conduct<br><br><u>Theories of defendants' liability</u><br>• Defendants' agency liability for SPDC<br>• Defendants' liability for aiding and abetting SPDC<br>• Defendants' liability for conspiring with SPDC | <u>Liability for extrajudicial execution</u><br>• Elements of SPDC aiding and abetting military's extrajudicial execution<br>• Elements of SPDC conspiring to commit extrajudicial execution<br>• Elements of SPDC in a joint venture to commit extrajudicial execution<br>• Elements of SPDC ratifying extrajudicial execution<br>• Defendants' agency liability for SPDC with respect to extrajudicial execution<br>• Defendants' liability for aiding and abetting SPDC on extrajudicial execution<br>• Defendants' liability for conspiring with SPDC on extrajudicial execution<br><br><u>Liability for torture</u><br>• Elements of SPDC aiding and abetting military's torture<br>• Elements of SPDC conspiring to commit torture<br>• Elements of SPDC in a joint venture to commit torture<br>• Elements of SPDC ratifying torture<br>• Defendants' agency liability for SPDC with respect to torture<br>• Defendants' liability for aiding and abetting SPDC on torture<br>• Defendants' liability for conspiring with SPDC on torture<br><br><u>Liability for battery</u><br>• Elements of SPDC aiding and abetting military's battery<br>• Elements of SPDC conspiring to commit battery<br>• Elements of SPDC in a joint venture to commit battery<br>• Elements of SPDC ratifying battery<br>• Defendants' agency liability for SPDC with respect to battery<br>• Defendants' liability for aiding and abetting SPDC on battery |

|  | • Defendants' liability for conspiring with SPDC on battery |
|---|---|

Now consider that this case involves twelve ATS and state law claims, ten theories of responsibility between SPDC and the military, and five theories of liability between defendants and SPDC.  Defendants' approach would repeat many of these fifteen theories twelve times over. In fact, in defendants' proposed instructions, the same phrases and paragraphs do in fact appear, either identically or with the name of the claim changed, twelve times.

Plaintiffs' proposed structure is the same way that the instructions were organized in *Bowoto v. Chevron*, which was a similarly complex case involving numerous claims and theories of liability on two levels of responsibility between Nigerian soldiers, Chevron's Nigerian subsidiary, and the parent company defendants.  There, the court first instructed the jury on the elements of each of the seven substantive claims.  Then the court gave instructions on each of the four theories of liability between defendants and their subsidiary and each of the eight theories of responsibility between the subsidiary and the Nigerian security forces.  As in this case, if the *Bowoto* court had organized their instructions as defendants here propose, each of these theories would have been repeated seven times, once for each substantive claim.

### DEFENDANTS' RESPONSE TO PLAINTIFFS' STATEMENT REGARDING STRUCTURE OF INSTRUCTIONS

Defendants have organized their proposed instructions to comport with *Sosa*'s mandate that plaintiffs must show that defendants' specific conduct is proscribed by specific norms of international law that are universally condemned by states out of a

sense of legal obligation and mutual concern.  *Sosa v. Alvarez Machain*, 542 U.S. 692, 725, 732 n.20 (2004).  On the other hand, plaintiffs' proposed structural scheme is based on a flawed methodology that fails to set forth any coherent or logical theory of liability. As set forth below in Defendants' Reservations and Objections, plaintiffs' proposed jury instructions seek to couple plaintiffs' ATS claims under international law against the Nigerian Government with theories of indirect liability based federal common law, New York and California law, and/or international law.  Plaintiffs do not explain on what basis their substantive claims can be coupled with these indirect theories of liability.

Plaintiffs' primary argument in favor of their structural scheme is that their instructions are more "efficient" and less "cumbersome" than defendants. (Proposed Joint Instructions Part 2.I.)  This is simply not true.  Under plaintiffs' proposed instructions, if the jury finds that plaintiffs have satisfied the elements of one of their substantive claims, the jury would then have to jump through the complexities of plaintiffs' proposed indirect liability instructions by skipping between sections of the instructions.

On the other hand, defendants' instructions are self-contained.  For each claim, all theories of indirect liability are clearly paired with a corresponding substantive claim such that the jury can easily follow the steps for a particular claim to reach the ultimate question of liability.  Additionally, who is being sued under a specific theory of liability and what theories apply to specific claims is easily identifiable in defendants' proposed instructions.

In addition to being more cumbersome, plaintiffs' instructions are also confusing.  For example, plaintiffs have an instruction for direct conspiracy between the

corporate defendants and the Nigerian Government and then an instruction for indirect conspiracy between SPDC and the Nigerian Government.  As stand alone instructions, these instructions would be highly prejudicial to defendants as a jury could mistakenly find one or more of the defendants liable by confusing these indirect theories of liability without having gone through all the steps necessary to establish liability.  In contrast, in defendants' proposed instructions, there is an explanation preceding the conspiracy instruction clearly differentiating the two theories of liability.

Furthermore, plaintiffs' structure does not clearly set forth who is being sued under each specific theory of indirect liability.  For example, Section 6 of plaintiffs' proposed instructions deals primarily with instructions for theories of indirect liability between SPDC and the Nigerian Government, but none of those theories would establish liability against defendants without also satisfying an instruction from Section 7. However, intermingled within Section 6 are indirect theories of liability directly against defendants (*e.g.*, Instruction No. 6.6.)  Additionally, plaintiffs' instructions do not make clear whether a given indirect theory of liability applies to all claims, or if it simply applies to a few.  For example, the headings for Instructions No. 6.6 and 6.6A state that those instructions apply to "All Claims".  Because these are the only instructions in Section 6 where "All Claims" appear in the headings, the negative implication from those headings is that the other instructions for theories of indirect liability do not apply to all claims, but this is not clear from the instructions.

Therefore, given defendants' structure that readily identifies the theories of indirect liability that apply to each claim and each defendant, and given the confusing

and prejudicial structure of plaintiffs' proposed instructions, this Court should adopt

defendants' proposed instructions.

## CHOICE OF LAW FOR NON-FEDERAL CLAIMS

### PLAINTIFFS' STATEMENT

In their jury instructions relating to plaintiffs' non-federal tort claims, defendants insist that Nigerian law applies to the substantive elements of each claim as well as to the relevant burdens of proof and damages available.  Both sides have already briefed the application of international and federal common law to the federal ATS claims and theories of liability, and we will not rehash that argument here.  But the subject of choice of law over the state-law claims has never been properly placed before the Court in the instant case.   Thus, plaintiffs herein set out their views as to why New York law applies to all aspects of the non-federal claims in this case.

### A.     New York law applies generally to the state-law claims.

#### 1.     Defendants failed to raise the applicability of foreign law in a timely manner.

It is the burden and duty of the party wishing to assert foreign law to bring both the issue of applicability and the substance of that foreign law to the attention of the Court in a timely manner.  Fed. R. Civ. P. 44.1. *See also Bel-Ray Co., Inc. v. Chermite Ltd.*, 181 F.3d 435, 440 (3rd. Cir. 1999).  Defendants have not done so in this case; rather, they have waived their right to raise Nigerian law by failing to raise it before now and by repeatedly relying on New York law.  Given the difficulty of researching Nigerian law and the short time before trial, defendants' failure to raise Nigerian law in a timely manner has prejudiced plaintiffs, and the Court should rule that this position has been waived.

As far as plaintiffs can tell, these jury instructions are the first occasion in which defendants have argued that Nigerian law applies to the state-law claims in this case.  In

fact, the first time that defendants ever suggested to this Court that Nigerian law should

be applied to any issues in this case was in their international law brief, filed December

12, 2008.  *See* Docket No. 303 at 66-79.[1]  Defendants now raise the possibility that

Nigerian law is the appropriate law to apply to the substance, burden of proof, and

damages available pursuant to plaintiffs' supplemental tort claims.  They are, however,

too late; they have waived their right to raise such contentions now.  *See, e.g., Whirlpool*

*Fin. Corp. v. Sevaux,* 96 F.3d 216, 221 (7th Cir. 1996) (holding that pre-trial notice of the

application of the Illinois Commerical Code to certain issues was inadequate to put court

on notice that Illinois law should apply as the law of the case).      Fed. R. Civ. P. 44.1

requires that parties wishing to assert the applicability of foreign law must give

reasonable notice.  The Advisory Committee's notes indicate that the reasonable notice

standard could change depending on the stage of litigation at which foreign law issues

became apparent.  However, this does not mean that defendants may wait until the last

minute before asserting the applicability of foreign law on issues that should have been

apparent to them from the very beginning of the litigation process.  The Advisory

Committee provides guidance on the matter:

> The stage which the case has reached at the time of the notice, the reason
> proffered by the party for his failure to give earlier notice, and the importance to
> the case as a whole of the issue of foreign law sought to be raised, are among the
> factors which the court should consider in deciding a question of the
> reasonableness of a notice.

---

[1] Even in that briefing, defendants' contentions about the applicability of Nigerian
law related only to agency and veil-piercing, two of plaintiffs' nine theories of liability
under which defendants are liable for the actions of SPDC and the Nigerian military.

Fed. R. Civ. P. 44.1, Notes of the Advisory Committee on the 1966 Amendments.  Each of these factors weighs against defendants here:

*The stage of the case:* There could hardly be a later stage at which to raise choice of law issues.  Courts have precluded parties from asserting foreign law when it has not even been raised in the pretrial order, and at earlier stages.  *See, e.g., DP Aviation v. Smiths Indus. Aero. & Def. Sys.*, 268 F.3d 829, 848, 849 (9th Cir. 2001) ("Absent extenuating circumstances… contentions about applicability of foreign law should be incorporated in the pretrial order.  [Appellees] could have anticipated the issue of prejudgment interest and given notice before the pretrial conference… [appellees] did not provide reasonable notice under Rule 44.1 of its intent to raise this issue of foreign law."); *APL Co. Pte. Ltd. v. UK Aerosoles Ltd., Inc.*, 2007 WL 3225469 at *4 (N.D. Cal. October 30, 2007); *see also Local 875 I.B.T. Pension Fund v. Pollack*, 992 F. Supp. 545, 559 (E.D.N.Y. 1998) (dismissing foreign law issues raised for the first time in a 12(b)(2) reply brief as unreasonable under Fed. R. Civ. P. 44.1).  Defendants did not raise this issue in the pretrial order.

*The reason for delay:* Defendants have put forth no reason for delay.  While defendants claim that "[t]he parties have never had the opportunity to brief the state law claims, nor have the parties submitted summary judgment briefs where such issues could have been litigated," defendants were free to raise these issues at multiple points throughout this litigation.  For example, if they felt that certain claims were not available under Nigerian law, they could have raised that in a motion to dismiss for failure to state a claim from the beginning.  Nor were defendants precluded from raising summary judgment or other motions; they simply did not do so before the motions cutoff passed.

*The importance of the foreign law issue:* Defendants do not propose to apply Nigerian law to a small part of the case; they propose to apply it to the *entirety* of six claims and their attendant theories of liability and damages.   This is fully half of plaintiffs' case.

Three additional reasons militate in favor of a finding of waiver here.  First, plaintiffs have had insufficient time to research Nigerian law.  Plaintiffs are aware of no searchable databases of Nigerian caselaw; while cases can be found in hard-copy case reporters, there are not even cumulative indexes of subjects, and Nigerian case reporters are not widely available outside the Library of Congress or Nigeria.  Indeed, it is only because some of plaintiffs' counsel have previously litigated a case decided partly under Nigerian law—*Bowoto v. Chevron Corp.*—that plaintiffs have any access to relevant Nigerian caselaw at all in the limited time available.  In that case, of course, the issue of choice of law was raised by motion and decided fully two years prior to trial, leaving the parties ample time to research the applicable law.  *See Bowoto v. Chevron Corp.*, No. C 99-02506 SI, 2006 WL 2455761 (N.D. Cal. Aug. 22, 2006).

Second, defendants have repeatedly relied on New York law in this case, when it suits them, for statutes of limitations and capacity issues, without making any statement that Nigerian law applies to the substantive claims.  (Indeed, with respect to capacity issues, defendants argued *against* the application of Nigerian law when plaintiffs urged it.)

Third, defendants never raised this issue as a defense in their answer, despite the fact that it was expressly raised in plaintiffs' complaint.  In the original complaint, filed November 8, 1996, and each subsequent complaint, plaintiffs alleged that their claims

arose "under the laws of New York, the United States, and Nigeria." If defendants believed that no claims arose under the laws of New York, they should have stated as much in their answer, or raised the issue in some other fashion. But in none of defendants' answers or other responsive papers have they ever raised Nigerian law as an affirmative defense or suggested that it should apply to the state tort claims.

This is not a case in which foreign law issues have remained unapparent due to the need for more discovery or the evolution of legal standards. It is therefore improper at this late stage, just weeks before trial, that defendants should be allowed to argue for the application of Nigerian law by slipping the issue into their proposed jury instructions.

### 2. Defendants have failed to identify any actual conflict between the laws of Nigeria and New York.

Even if defendants' timing were proper, their manner of raising the choice of law issues fails to oust New York law because it fails to meet the first step of New York's choice-of-law test. This step is the identification of an actual conflict between the law of New York and the law of the foreign jurisdiction; in the absence of conflicts, there is no need to engage in choice of law analysis. *See Matter of Allstate Ins. Co. (Stolarz)*, 81 N.Y.2d 219 (1993). In such a case, New York courts may apply forum law rather than foreign law. *See, e.g.*, *Portanova v. Trump Taj Mahal Associates*, 704 N.Y.S.2d 380 (N.Y. App. Div. 2000). In the instant case, where the task of researching and arguing over Nigerian law on short notice is unduly burdensome and time-consuming, it only makes sense to apply forum law.

Nowhere in defendants' proposed instructions, or anywhere else, do defendants attempt to set out the ways in which Nigerian law arguably conflicts with New York law.

15

In many cases, while their purported Nigerian law instructions differ from the New York pattern instructions, the distinctions are not borne out by the sources cited.  For example, defendants' proposed battery instruction appears to require "unlawful" physical force.  But there is no evidence in their sources either that illegality is a predicate of the tort of battery, or that this adjective, even if proper, adds any additional requirement to the definition of the act.  The treatise cited by defendants does not suggest this requirement.  *See* G. Kodilinye, Nigerian Law of Torts 12-14 (1996).  Nor do the sources cited by defendants below.  *See Obaseki v. Oyakhire*, [1987] 1 Q.L.R.N. 105, 114, 118-19; Nigerian Constitution § 194(b).  In other cases, their instructions do not even appear substantively different from New York law.

It is incumbent upon the party urging the application of foreign law to demonstrate a need to engage in a choice of law analysis, and that is doubly true here, where the Court is familiar with New York law but Nigerian law is difficult to determine in a short period of time.  Defendants would need to identify each specific rule of law that they claim presents an actual conflict in order to even begin the choice-of-law analysis.  Because they have not done so, no choice-of-law analysis is necessary.

**B.      Even if Nigerian law applies generally, New York law applies to many issues.**

Even if Nigerian law applies generally to the state-law claims, there are at least four issues for which New York law must apply: wrongful death law; burdens of proof; intentional and negligent infliction of emotional distress; and damages.

### 1.    Defendants are estopped from asserting that Nigerian wrongful death law applies in this case.

Defendants are barred by judicial estoppel from arguing that Nigerian law applies to plaintiffs' wrongful death claims, because defendants urged the New York statute of limitations for such claims, and the Court accepted that argument.

A party is estopped from asserting a position if 1) the party against whom judicial estoppel is being asserted advanced an inconsistent position in a prior proceeding, and 2) the prior inconsistent position was adopted by the first court in some manner. *Bates v. Long Island R. Co.,* 997 F.2d 1028, 1038 (2nd Cir. 1993); *AXA Marine and Aviation Ins. (UK), Ltd. v. Seajet Indus., Inc.*, 84 F.3d 622, 628 (2nd Cir. 1996).   In previous phases of this litigation, defendants urged the application of New York wrongful death statute of limitations rather than Nigeria's longer statute.[2]  *See* Anderson Mem. I at 13; Anderson Reply, note 14; Docket No. 90 at 8.  The Court relied on these arguments in its rulings. 2002 U.S. Dist. LEXIS 3293 at *63 (S.D.N.Y. Feb. 28, 2002) ("The Court agrees with defendant Anderson that New York statutes of limitations apply to plaintiffs' supplemental state law tort claims."); *see also* Docket No. 182 at 9, 25-30; Docket No. 202 at 9.  Defendants are thus estopped from asserting Nigerian wrongful death law at this point.  *See, e.g., First Interstate Credit Alliance, Inc. v. Arthur Andersen & Co.*, 541 N.Y.S.2d 433, 435 (N.Y. App. Div. 1989) ("fairness supports application of New York law in a situation, such as herein, where defendant succeeded in having the negligence cause of action against it dismissed by invoking the protection of the New York rule of

---

[2] The applicable Nigerian limitations period is three years.  Laws of Eastern Nigeria, Fatal Accidents Act, ch. 52, §6(1) (1961).

privity and now endeavors to escape liability from the remaining cause of action by disclaiming New York law").

Defendants may argue that New York law would apply to the wrongful death statute of limitations regardless of whether it is asserted under Nigerian or New York law.  But this is not the case.  Although New York generally applies its own statute of limitations to foreign claims if it is shorter than the foreign limitations period, *see* N.Y. C.P.L.R. § 202, that is not the case for wrongful death claims, where the death occurred outside New York.  *Lipton v. Lockheed Aircraft Corp.*, 307 N.Y. 775, 777 (1954) (declining to apply the New  York borrowing statute and affirming lower court decision applying the longer Egyptian statute of limitations in a wrongful death suit).  Thus, for wrongful death, unlike other claims, a New York statute of limitations would *only* apply here if New York substantive law also applies.  *See, e.g.*, *Janes v. Sackman Bros. Co.* 177 F.2d 928 (2d. Cir. 1949) (holding, in the wrongful death context, that "[t]he limitation cannot be removed from its context and applied as a bar to actions brought under the statutes of another state").  This court has twice issued rulings about the viability of plaintiffs' wrongful death claims based on defendants' representations.  Defendants are therefore estopped from asserting that Nigeria's substantive law of wrongful death applies to the surviving claims in this case.

Defendants argue, contrary to the above caselaw from the New York Court of Appeals and the Second Circuit, that wrongful death statutes of limitation are severable from the substantive cause of action.  But the very case they cite belies this claim; it reveals only that in the unusual case where the statute of limitations is considered

procedural, rather than a substantive limitation on the right to recover, it is severable from

the substantive claim.

> For choice of law purposes, New York has traditionally regarded statutes of
> limitations as procedural unless the right sued upon was created by a foreign
> statute under which the commencement of an action within a specified period is a
> condition precedent to securing relief.  In such instances, the running of the
> statute is said to bar both the right and the remedy, and the limitation period is
> considered to be so tied up with the underlying right that for choice of law
> purposes, the limitation clause is treated as a "substantive" rule of law.
> *Generally, where a wrongful death statute contains a specific "builtin" limitation
> period, such a limitation is so regarded.*

*Chartener v. Kice*, 270 F. Supp. 432, 436 (E.D.N.Y. 1967) (citations omitted) (emphasis

added).  While *Chartener* held that New York's *own* wrongful death statute of limitations

was procedural, *id.*, it did not hold, as defendants argue, that *all* such provisions are

procedural.  Here, the Nigerian statute of limitations is clearly substantive; as per

*Chartener*, because "this statute contains a specific 'builtin' limitation period," *id.*, it is

regard as a substantive rule of law.  *See* Laws of Eastern Nigeria, Fatal Accidents Act, ch.

52, §6(1) (1961) (incorporating statute of limitations into the wrongful death law).  In

fact, while U.S. courts do not appear to have considered whether this precise Nigerian

wrongful death statute's limitations period is substantive, they have ruled that other

Commonwealth wrongful death statutes—such as the original English Fatal Accident

Act, on which the Nigerian statute is patterned—have substantive limitations periods.

*See, e.g.*, *Gehling v. St. George University School of Medicine, Ltd.*, 698 F. Supp. 419,

425-26 (E.D.N.Y. 1988) (quoting an English Law Commission's report noting that a

statute of limitations is substantive "[w]here a statute creates a new right and at the same

time specifies that such right shall only continue for a limited period.  *This might be*

*exemplified by the law relating to fatal accidents*." (emphasis added by *Gehling*)); *id.* at

426 (ruling that the statute of limitations under Grenadian law, patterned after English

law, therefore applies notwithstanding New York's borrowing statute).

2.      <strong>Burdens of proof are a procedural issue governed by<br>the law of the forum.</strong>

Defendants argue that a heightened burden of proof applies to plaintiffs' assault

and battery claims by virtue of the Nigerian Evidence Act (1990), Cap. 112, § 138(1).

This contention, however, overlooks the fact that under New York's choice of law rules,

burdens of proof are a procedural matter and are therefore dictated by New York law,

unless a foreign statute's burden of proof rules are meant to affect the parties' substantive

rights. *Fitzpatrick v. International Ry. Co.*, 252 N.Y. 127, 133-34 (1929) (cited

approvingly in *Palmer v. Hoffman*, 318 U.S. 109, 117 (1943)).  Thus, even if Nigerian

substantive law applies, New York's preponderance of the evidence standard is still the

rule.

Although defendants may argue that, under *Fitzpatrick*, the Nigerian burden of

proof is meant to affect parties' substantive rights, this is plainly not the case.  To fall

under that narrow exception, evidentiary rules generally must a) create presumptions

and/or shift the burden of proof onto another party, *see, e.g., N.Y. Cent. R.R. Co. v.

Monroe*, 188 F. Supp. 826, 833-34 (S.D.N.Y. 1960) (applying Ohio rule shifting burden

of proof); or b) create a right that is unknown in the forum jurisdiction, *see e.g.,

Fitzpatrick*, 252 N.Y. at 134-35 (noting that unlike in New York, Ontario's Contributory

Negligence Act allows recovery for the negligence of another, even if the plaintiff

himself has been contributorily negligent).  *See generally,* 35 A.L.R. 298, §§4[a] and [b].

The rule in question here, on the other hand, is procedural in nature; it is merely a

Nigerian rule on evidentiary standards which New York courts are not expected to apply. Thus, the preponderance of the evidence standard applies to all claims.

Defendants cite several cases suggesting that burdens of proof are substantive, but they fail to cite any applicable authority.  Two of their cases,  *American Dredging Co. v. Miller*, 510 U.S. 443 (1994), and *Antilles Steamship Co., Ltd., v. Members of the American Hull Ins. Syndicate*, 733 F.2d 195 (2d Cir. 1984), are admiralty cases in which federal maritime law applies.  By contrast, the choice of law for supplemental claims in this case is governed by the law of the forum, New York.  *See, e.g.*, *Rogers v. Grimaldi*, 875 F.2d 994, 1002 (2d Cir.1989) ("A federal court sitting in diversity or adjudicating state law claims that are pendent to a federal claim must apply the choice of law rules of the forum state.").  Defendants' third case, *United States v. Standard Oil Co. of California*, 270 F.2d 50 (2d Cir. 1959), is not a choice of law case at all, let alone a case discussing the choice of law for burdens of proof under New York law.  It simply observes in passing, in a case involving only federal claims: "The doctrine of burden of proof has two aspects, procedural and substantive. As a matter of procedure it requires the party carrying the burden to come forward with its proofs. As a matter of substantive law the term is frequently used to indicate the fact that the burdened party's proof must outweigh the opposing proof in order to establish the claim asserted."  None of these cases alter the rules of New York law cited by plaintiffs.

> **3.    Defendants have failed to show that Nigerian law does not recognize claims for intentional or negligent infliction of emotional distress.**

Defendants claim that intentional and negligent infliction of emotional distress are not actionable in Nigeria.  But even if their general argument in favor of Nigerian law has

not been waived, this specific argument certainly has been; moreover, defendants fail to substantiate the argument, and it is incorrect on the merits.

Even if defendants were not required to raise Nigerian law in their answer or in the pretrial order, they certainly needed to raise a defense that would oust these claims. But nowhere in their list of defenses in the pretrial order do defendants suggest that Nigerian law is a defense to these claims. *See* Joint Pretrial Order at 22, 24-25. Indeed, this is arguably an affirmative defense that, under Rule 8(c), must be pled; it is an argument that "treats the factual allegations in a complaint as true, but then goes on to assert new matter"—the applicability of Nigerian law—"that eliminates or limits the defendant's ordinary liability stemming from those allegations." *Gwin v. Curry*, 161 F.R.D. 70, 71 (N.D. Ill. 1995). Even if the defense did not need to be raised in a pleading, proposed jury instructions are not an appropriate vehicle for a covert motion to dismiss plaintiffs' claims.

Nor have defendants substantiated their position. As the party asserting the applicability of Nigerian law, defendants bear the burden of proving that law. *Application of Chase Manhattan Bank*, 191 F.Supp. 206, 209 (S.D.N.Y 1961), *aff'd,* 297 F.2d 611 (2d Cir. 1962). None of defendants' sources suggest that these claims are not actionable in Nigeria; defendants' argument is insufficient. In fact, more convincing assertions of foreign law than defendants' unsupported contention have been held insufficient proof for application by courts in this Circuit. *See, e.g., Telesphore Couture v. Watkins*, 162 F.Supp. 727, 730 (E.D.N.Y. 1958) ("The description of the alleged Civil Code of the Province of Quebec, as set forth in the moving affidavit, does not provide a sufficient basis for this Court to apply the statute to the facts in this case.").

Perhaps the reason defendants have failed to provide authority for their contention is that both intentional and negligent infliction of emotional distress are cognizable causes of action under Nigerian law.  As has been set forth by prior expert declarations in this case, and as defendants implicitly acknowledge (by citing English cases), pre-1960 English caselaw is generally applicable in Nigeria.  *See, e.g.* Declaration of Joseph Nwobike ¶¶ 5.01-5.06 (June 28, 2004) (setting forth sources of Nigerian law including "the general laws of England that were introduced" in Nigeria prior to 1960, and that "the Nigerian Courts are also persuaded in reaching decisions by decisions of Commonwealth jurisdictions such as The English House of Lords"); Defendants' Instruction on Summary Execution (citing, *inter alia*, the English cases *Woolfson v. Strathclyde Reg'l Council*, [1978] 38 P. & C.R. 521, and *Gilford Motor Co. v. Horne*, [1933] All E.R. 109 (A.C.)).[3] The English courts have long recognized these causes of action.  *See Wilkinson v. Downtown*, [1897] 2 Q.B. 57 (1897) (intentional infliction); *Dulieu v. White & Sons*, [1900–03] All E.R. 353, [1901] 2 K.B. 669 (1901) (negligent infliction).  A Nigerian torts treatise accepts the applicability of these precedents in Nigeria.  *See* 1 I.P. Enemo, *Notes on the Law of Torts* 77 (1998) ("If one intentionally or recklessly causes severe emotional distress to another, he will be liable provided physical or mental harm results from it." (citing *Wilkinson*); *id.* at 78 ("Where the plaintiff suffers shock because he is placed in reasonable fear of immediate injury to himself as the result of negligence of the

---

[3] Defendants' argument regarding the applicability of English sources to determine Nigerian law merely serves to underscore the reasons why their late reliance on Nigerian law is prejudicial.  Not only must the Court now attempt to determine what Nigerian law is, without having any substantial ability to do its own research on Nigerian cases, but the parties have not even come to a resolution about what the applicable sources of Nigerian law are.

defendant, the defendant will be liable." (citing *Dulieu*)).  Indeed, at least one Nigerian

case discusses claims brought for "shock" caused by the negligence of defendants

without suggesting that this is a novel claim.  *See Lawal v. Deputy Superintendent of

Police*,  [1975] 2 W.S.C.A. 72, 72 (Nig. Western State Ct. of Appeal 1975).

As all available evidence demonstrates that intentional and negligent infliction of

emotional distress are cognizable in Nigeria, the court should disregard defendants'

unsupported contention that they are not cognizable and, for the reasons detailed in

plaintiffs' objections to defendants' proposed instructions, adopt plaintiffs' jury

instruction instead.

### 4.     Defendants have waived reliance on Nigerian law for damages.

While all of defendants' Nigerian law arguments are untimely, their urging of

Nigerian law for damages issues is more untimely still.  In the original exchange of these

instructions on March 13th, defendants' damages instructions cited no Nigerian sources,

nor any special rules of Nigerian law.  Not until Friday evening, March 27th—five days

before these instructions were due to the Court—did defendants exchange proposed

instructions that relied on Nigerian sources, and that purported to state Nigerian rules,

with respect to damages.

Even if two weeks is not an unreasonable amount of time in which to research

Nigerian law, five days certainly is.  Defendants should not be permitted to rely on

Nigerian law for any damages issues.

**DEFENDANTS' STATEMENT**

### A. NIGERIAN LAW GOVERNS PLAINTIFFS' STATE LAW CLAIMS

While defendants contend that this Court does not have subject matter over plaintiffs' state law claims because it lacks subject matter jurisdiction over plaintiffs' ATS claims, *see Arbaugh v. Y&H Corp.*, 546 U.S. 500, 514 (2006), if this Court were to find that it has jurisdiction over plaintiffs' state law claims, Nigerian law must govern those claims.

### 1. Defendants Complied with Rule 44.1

Rule 44.1 provides that "[a] party who intends to raise an issue concerning the law of a foreign country shall give notice by pleadings or other reasonable written notice". *Id.* (emphasis added).[4]  There is no surprise here in defendants' reliance on Nigerian law for the proposed state law and damages jury instructions.  Quite the contrary.  Plaintiffs' own complaint states that all five of its state law claims are actionable under Nigerian law.  (*See Wiwa* 5th Am. Compl. ¶¶ 157, 162, 168, 174, 177; *see also* Anderson 3d Am. Compl. ¶¶ 122, 127, 133, 139, 142.)  Furthermore, in response to defendants' statement that "there can be no doubt that the applicable law is the law of Nigeria" in Defendants' Memorandum of Law in Support of Their Motion to Dismiss the Complaint, dated May 21, 1997, plaintiffs stated that they "assum[ed] but [did] not

---

[4] Congress passed Rule 44.1 to avoid "unfair surprise" to a party.  *Rationis Enters. Inc. of Panama v. Hyundai Mipo Dockyard Co.*, 426 F.3d 580, 585 (2d Cir. 2005); *see also* 9 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2444 (2d ed. 1995).

conced[e] that Nigerian law applies".  (Aug. 31, 1997 Pls.' Mem. in Opp'n to Defs.' MTD ¶¶ 4-8.)[5]

Similarly, defendants made clear in their Memorandum of Law on Issues of International Law that Nigerian law would govern plaintiffs' indirect theories of liability to the extent this Court did not adopt *Sosa*'s dictate that international law must provide the source of any theory of indirect liability.  (*See* Int'l Law Br. at 66-80.)  The parties have never had the opportunity to brief the state law claims, nor have the parties submitted summary judgment briefs where such issues could have been litigated.  *See Canadian Imperial Bank of Commerce v. Saxony Carpet Co*., 899 F. Supp. 1248, 1253 (S.D.N.Y. 1995) (holding that notice of intent to raise an issue of foreign law made in motion for summary judgment constituted reasonable notice).

With respect to the proposed jury instructions themselves, the parties initially exchanged their respective proposed jury instructions on March 13, 2009, weeks before the jury instructions were due.  Defendants clearly set forth their reliance on Nigerian law for plaintiffs' state law claims in those exchanged instructions.  Contrary to plaintiffs' conclusory allegation (Proposed Joint Instructions Part III.A.1), nowhere in those proposed instructions did defendants rely on New York law except for their state

---

[5] Contrary to plaintiffs' contention (Proposed Joint Instructions Part III.A.1), defendants have not waited until the "last minute" to raise the applicability of Nigerian law.  Rule 44.1 does not attempt to fix a "definite limit" on a party's time for giving notice of an issue of foreign law.  Fed. R. Civ. 44.1 advisory committee's note.  Indeed, Rule 44.1 states that notice may still be reasonable if the issue of foreign law is not raised until trial.  *Id*.; *see also Club Car, Inc. v. Club Car (Quebec) Imp., Inc*., 362 F.3d 775, 781 (11th Cir. 2004) (finding that notice was reasonable where it was given only for the first time two weeks before trial); *see also DP Aviation v. Smiths Indus. Aero. & Def. Sys.*, 268 F.3d 829, 847 (9th Cir. 2001) (stating that parties may present issues of foreign law in their appellate briefs at the latest, even if not raised in the district court).

law instructions for intentional and negligent infliction of emotional distress.  Defendants did so only because those two causes of action do not exist under Nigerian law and defendants wished to provide alternative instructions to plaintiffs' proposed instructions.

## 2. There Is an Actual Conflict Between Nigerian and New York Law, and Nigeria Has a Greater Interest in These Claims.

For any case in which there may be a potential choice of law issue, courts must engage in a two-step process.  *First*, a court must determine whether there is an actual conflict between the laws of the jurisdictions involved.  *See Matter of Allstate Ins. Co. (Stolarz)*, 81 N.Y.2d 219, 223 (N.Y. 1993).  *Second*, if there is a conflict, the law of the jurisdiction having the greatest interest in resolving the particular issue will prevail.  *Cooney v. Osgood Machinery, Inc.*, 81 N.Y.2d 66, 72 (N.Y. 1993).

*First*, there is an actual conflict between Nigerian and New York law. Plaintiffs' contention that no conflict exists in this case between the relevant tort laws of Nigeria and New York is unfounded.  Contrary to plaintiffs' contention (Proposed Joint Instructions III.A.2), defendants have met the "first step" of New York's choice of law analysis.  *See Matter of Allstate Ins. Co. (Stolarz)*, 81 N.Y.2d 219, 223 (N.Y. 1993).  For example, with respect to plaintiffs' claims for intentional and negligent infliction of emotional distress, neither of those claims exists under Nigerian law.  Additionally, plaintiffs' burden of proof is different for both assault and battery under the two laws.[6]

---

[6] Plaintiffs' contention that defendants have misstated Nigerian law is simply incorrect. For example, plaintiffs claim that defendants' inclusion of the phrase "unlawful physical force" as an element of defendants' proposed battery instruction is not based on any source of Nigerian law.  This contention is wrong. *See Obaseki v. Oyakhire*, [1987] 1 Q.L.R.N. 105, 114, 118-19; Nigerian Constitution § 194(b).

In addition to making conclusory statements that there is no conflict between New York and Nigerian law, plaintiffs seek to create their own choice of law test.  Plaintiffs argue that having to research Nigerian law is "unduly burdensome and time-consuming", so it "only makes sense" to apply New York law in this case. (Proposed Joint Instructions Part III.A.2.)  Plaintiffs' "make sense" test has no basis in law and has no relevance as to whether a conflict exists between Nigerian and New York law.

*Second*, because there is an actual conflict in this case between Nigerian and New York law with respect to plaintiffs' tort claims, New York choice of law principles dictate that Nigerian law apply to plaintiffs' state law claims.

New York's conflict of law rules use an "interest analysis" in tort cases, under which the law of the jurisdiction having the greatest interest, or "greatest concern", in the litigation applies.  *Schultz v. Boy Scouts of Am., Inc.*, 65 N.Y.2d 189, 196-97, 480 N.E.2d 679, 683 (1985); *Cooney v. Osgood Machinery, Inc.*, 81 N.Y.2d 66, 72 (N.Y. 1993) (quoting *Babcock v. Jackson*, 12 N.Y.2d 473, 481 (N.Y. 1963)).  "To determine which jurisdiction has the greatest interest, the Court must look only to those facts or contacts that relate to the purpose of the particular laws in conflict.  Under this formulation, the significant contacts are, almost exclusively, the parties' domiciles and the locus of the tort".  *Hidden Brook Air, Inc. v. Thabet Aviation Int'l, Inc.*, 241 F. Supp. 2d 246, 276-77 (S.D.N.Y. 2002).

Because the state law claims at issue are conduct-regulating rules, the law of the jurisdiction in which the alleged torts occurred will govern.  *Aro Chem Int'l, Inc. v. Buirkle*, 968 F.2d 266, 270 (2d Cir. 1992); *see also Krock v. Lipsay*, 97 F.3d 640, 646 (2d

Cir. 1996); *Cooney*, 81 N.Y.2d at 72 ("[T]he law of the jurisdiction where the tort occurred will generally apply because that jurisdiction has the greatest interest in regulating behavior within its borders.").  Thus, Nigerian law must govern the state law claims.

### 3. Defendants May Argue that Nigerian Law Governs Plaintiffs' Wrongful Death Claim.

Under New York law, "the issue of the statute of limitations [is] separate and apart from the issue of whether the New York or [foreign] wrongful death statute applies."  *Chartener v. Kice*, 270 F. Supp. 432, 436 (E.D.N.Y. 1967).  New York courts have held that the statute of limitations period affects only the remedy and not the right conferred by a wrongful death statute.  *Id.*

Defendants are not estopped from arguing that Nigerian law should govern plaintiffs' wrongful death claims based on reliance or the New York statute of limitations.  As plaintiffs acknowledge, New York courts generally apply the New York statute of limitations to *foreign claims* where the New York statute of limitations period is shorter than that of the foreign state, as is the case here.  (Proposed Joint Instructions III.B.1); *See, e.g.*, N.Y.C.P.L.R. § 202; Restatement of Conflict of Laws § 397.  Plaintiffs are wrong, however, that there is an exception to the applicability of the New York statute of limitations for wrongful death claims where the death occurred outside New York.  No exception exists, and the cases plaintiffs cite for the proposition that there is an exception are inapposite.

The statute of limitations is considered procedural for the purposes of any choice of law analysis.  *Chartener v. Kice*, 270 F. Supp. 432, 436 (E.D.N.Y. 1967).  Because the statute of limitations affects only the remedy, and not any right conferred by

a wrongful death statute, this Court was correct to apply New York law to the statute of limitations issue.  But Nigerian law must govern the substantive issues related to this claim.  This Court is not bound to apply New York law to the substance of this claim simply because it applied New York's statute of limitations to these wrongful death claims.  These are separate inquiries.  Indeed, New York courts will consider the issue of the statute of limitations for a wrongful death claim separately from the substantive elements of that claim.  *Id.*

> 4.  **Plaintiffs' Burden of Proof Is a Matter of Substantive Law for Choice of Law Purposes.**

It is well-established that burden of proof issues are substantive issues, not procedural.  *See, e.g.*,  *American Dredging Co. v. Miller*, 510 U.S. 443, 454 (1994) ("For many years, . . . [burden of proof for choice of law purposes] has been viewed as a matter of substance, . . . which is unquestionably the view that the Court took in [*Garrett v. Moore-McCormack Co.*, 317 U.S. 239, 248-49, 253 (1942)], stating that the right of the plaintiff to be free of the burden of proof 'inhered in his cause of action', 'was a part of the very substance of his claim and cannot be considered a mere incident of a form of procedure'.  Unlike burden of proof . . . and affirmative defenses . . ., *forum non conveniens* does not bear upon the substantive right to recover."); *Antilles Steamship Co., Ltd., v. Members of the American Hull Ins. Syndicate*, 733 F.2d 195, 198 (2d Cir. 1984) ("Such issues as burden of proof and general rules of insurance policy interpretation are substantive rules."); *United States v. Standard Oil Co. of California*, 270 F.2d 50, 59 (2d Cir. 1959).

The Nigerian Evidence Act plainly states "[i]f the commission of a crime by a party to any proceeding is directly in issue in any proceeding civil or criminal it

must be proved beyond reasonable doubt".  Nigerian Evidence Act § 138(1).  Thus, plaintiffs must prove their state law claims for assault and battery beyond a reasonable doubt.

5.    **There Are No Causes of Actions for Intentional and Negligent Infliction of Emotional Distress Under Nigerian Law, and Nigerian Law Governs Defendants' Proposed Damages Instructions**

There are no causes of action for either intentional or negligent infliction of emotional distress under Nigerian law.  Indeed, a United States court has found that those two causes of action do not exist under Nigerian law.  *See Bowoto v. Chevron Corp.*, No. C 99-02506 SI, 2006 WL 2455761, at *8 (N.D. Cal. Aug. 22, 2006).

Like plaintiffs' in this case, the plaintiffs in *Bowoto* provided the court with "no evidence that Nigerian law recognizes . . . causes of action" for intentional and negligent infliction of emotional distress.  *Id.*  Instead, plaintiffs make conclusory statements to try to refute defendants' contention that Nigerian law does not recognize these two causes of action.  (Proposed Joint Instructions III.B.3.)  Plaintiffs claim that defendants, by citing English case law, "implicitly acknowledge" that English case law is generally applicable in Nigeria, without citing to any case on which defendants rely in support of their articulation of Nigerian law for their instructions or plaintiffs' state law claims.  (*Id.*)  Additionally, plaintiffs refer to prior expert declarations that declare English case law to be generally applicable in Nigeria, yet plaintiffs do not cite to a single specific declaration.  (*Id.*)  And contrary to plaintiffs' assertion that none of defendants' sources suggests that these two claims are not actionable in Nigeria, the *Bowoto* court clearly stated that these two causes of action do not exist under Nigerian law.

Additionally, defendants' reliance on Nigerian law for their proposed damages instructions is proper.  As noted above, plaintiffs cannot contend that defendants' reliance on Nigerian law is an "unfair surprise" to them when plaintiffs themselves acknowledged the possibility of Nigerian law serving as a basis for their state law claims in their own Complaint.[7]

---

[7] Plaintiffs' characterization of defendants' exchange of proposed instructions is incorrect.  Defendants modified their proposed damages instructions after the meet and confer in an effort to arrive at an agreement with plaintiffs for those instructions.

**PLAINTIFFS' GENERAL OBJECTIONS AND RESERVATIONS**

   **PLAINTIFFS' STATEMENT**

**II.     Plaintiffs' General objections to defendants' instructions.**

      **A.     Terminology.**

Plaintiffs take a different approach than defendants on the following terms and phrases:

*SPDC.*  The parties both use a shorter form for the Shell Petroleum Development Company of Nigeria, Ltd.  Plaintiffs' preferred form is Shell Nigeria, because this is much more straightforward for the jury to understand rather than trying to remember what an acronym means.

*Nigerian government.*  Plaintiffs object to this term in reference to the direct tortfeasors here.  Many of the acts at issue were carried out by members of the Nigerian military, and may or may not have been authorized by the Nigerian government.  They need not be acts of the government in order to be actionable.  Plaintiffs prefer the more accurate and descriptive "members of the Nigerian military and military government."

*Individually and on behalf of.*  Plaintiffs object to the use of the legalese "individually and on behalf of," or similar phrasings, including simply "on behalf of." The jury needs to know who the injured party is, but the technical issues of capacity or who is bringing the claim are irrelevant to the jury's deliberations and may well be confusing. Thus, plaintiffs proposed phrasings that simply state that "plaintiffs" are bringing the claims but specify who the injured party is (*e.g.*, "Plaintiffs contend that defendants are liable for assault against Ken Saro-Wiwa, Blessing Kpuinen, and John

Kpuinen," rather than "Ken Wiwa, on behalf of Ken Saro-Wiwa, contends that

defendants are liable for assault against Ken Saro Wiwa, and Blessing Kpuinen,

individually and on behalf of John Kpuinen, contends that defendants are liable for

assault against her and John Kpuinen").

*Plaintiffs.* Plaintiffs object to the use of the term "plaintiffs" for the victims of the

torts. Some of the victims are decedents and this may confuse the jury. Plaintiffs

generally prefer simply listing the names of the victims, or otherwise using the term

"victims."

### B. Claims at issue.

Plaintiffs generally object to defendants' instructions to the extent that they do not

reflect the proper claims being asserted by each plaintiff, as reflected by plaintiffs'

position in the JPTO. This includes the following omissions:

**Plaintiffs' Claims Against Royal Dutch Petroleum Company and The "Shell"
Transport and Trading Company, p.l.c. for Violations of Norms of
International Law**

- **Summary Execution:** Ken Wiwa,  Blessing Kpuinen, Lucky Doobee, Friday
  Nuate, Monday Gbokoo, and James N-nah also have individual claims for
  summary execution

- **Torture:** Ken Wiwa, Blessing Kpuinen, Lucky Doobee,Friday Nuate, Monday
  Gbokoo, James N-Nah and David Kiobel also have individual claims for torture.

- **CIDT:** Ken Wiwa also has an individual claim for CIDT.

- **Arbitrary arrest and detention:** Ken Wiwa, Blessing Kpuinen, Lucky Doobee,
  Friday Nuate, Monday Gbokoo, and David Kiobel also have individual claims for
  Arbitrary Arrest and Detention.

**Plaintiffs' Claims Against Mr. Brian Anderson for Violation of Norms of
International Law**

- **Summary Execution:** Plaintiffs also have individual claims of Summary Execution for Ken Wiwa, , Blessing Kpuinen, , Lucky Doobee, Friday Nuate, , Monday Gbokoo, and David Kiobel against Anderson.

- **Torture:** Plaintiffs also have individual claims of torture for Ken Wiwa, , Blessing Kpuinen, Lucky Doobee, Friday Nuate, Monday Gbokoo, and David Kiobel against Anderson.

- **Arbitrary Arrest and Detention:** Plaintiffs also have individual claims of arbitrary arrest and detention for Ken Wiwa, Blessing Kpuinen, Lucky Doobee, Friday Nuate, Monday Gbokoo, Michael Vizor, and David Kiobel against Anderson.

**Plaintiffs' Claims Against Royal Dutch Petroleum Company and The "Shell" Transport and Trading Company, p.l.c. for Violations of Nigerian Law**

- **Wrongful Death:** Plaintiffs also have individual claims for Wrongful Death for Ken Wiwa and Blessing Kpuinen.

- **Negligent Infliction of Emotional Distress:** Plaintiffs also have individual claims for NIED for Ken Wiwa.

**Plaintiffs' Claims Against Mr. Brian Anderson for Violations of Nigerian Law**

- **Negligent Infliction of Emotional Distress:** Ken Wiwa also has an individual claim of NIED against Anderson, and Friday Nuate also has an NIEF claim on behalf of Felix Nuate against Anderson.

- **Negligence:** Friday Nuate also has a negligence claim on behalf of Felix Nuate of against Anderson.

## DEFENDANTS' RESPONSE

### A.   Terminology

With respect to SPDC versus Shell Nigeria, defendants object to use of the term "Shell Nigeria" because it is overbroad. "Shell Nigeria" is composed of three companies: Shell Petroleum Development Company (SPDC); Shell Nigeria Exploration and Production Company (SNEPCO); and Shell Nigeria Gas (SNG). Furthermore, the

vast majority of the documents refer to either "SPDC" or the full names.  Thus, use of "Shell Nigeria" is improper because it will serve to confuse the jury and it is too broad.

With respect to "Nigerian government", defendants object to use of the term "members of the Nigerian military and military government" because plaintiffs' allegations are not just against the Nigerian military.  For example, the allegations in plaintiffs' *Wiwa* Complaint mention both the Mobile Police Force (¶ 42) and the Nigerian Police Force (¶ 67).  Plaintiffs are improperly seeking to characterize all acts of any security force as acts of the military or its members.  More importantly, plaintiffs' own objection acknowledges that "many of the acts at issue were carried out by members of the Nigerian military", but not *all* of them were.  The Nigerian Government is a more appropriate term because it encompasses all of the security forces and is an accurate description of plaintiffs' own allegations.

With respect to "individually and on behalf of", plaintiffs' phrasing is confusing.  Not every plaintiff has a claim for each cause of action and as such, the term "plaintiffs" should not be used generally in each instruction because not all plaintiffs bring claims under each cause of action.  Furthermore, there is nothing confusing or prejudicial about defendants' proposed language, "on behalf of".  Plaintiffs' own instructions are evidence of the fact that there is nothing confusing about the the term "on behalf of", as plaintiffs use the phrase in their own proposed instructions.  (*See* Pls'. Proposed Instruction No. 8.5.)

With respect to "Plaintiffs", defendants object to use of the term "victims".  It is highly prejudicial toward defendants.  "Victim" carries with it the

implication that the party was wronged in some way.  Defendants prefer use of the term plaintiff because it is neutral.

**B.      Claims in Dispute**

As reflected in defendants' proposed jury instructions for the ATS and state law claims, as well as defendants' summary of claims and defenses in the Joint Pre-Trial Order, plaintiffs do not have any of the representative or individual claims listed by plaintiffs above.

## DEFENDANTS' STATEMENT OF RESERVATIONS AND OBJECTIONS

### DEFENDANTS' STATEMENT

Throughout the proposed jury instructions, defendants have proposed various instructions as counter-instructions to plaintiffs' proposed instructions even though defendants believe plaintiffs' proposed instructions are improper or unavailable under applicable law.  Defendants included such instructions solely for purposes of providing the Court with a counter-instruction, if and only if the Court decides to instruct the jury on those claims proposed by plaintiffs.  Defendants' counter-instructions on those claims are proposed without prejudice and subject to the reservations and objections set forth in this statement.  Throughout the instructions, footnotes at the beginning of relevant sections will be included for the convenience of the Court to supply cross-references to the Statement of Reservations and Objections in which the relevant legal issues are addressed.  To avoid repetition, a footnote will appear only in the first instruction to which defendants wish to make a reservation or objection on a particular legal issue, even though that reservation or objection applies to all instructions in which the same legal issue is presented.  Citations to Defendants' Statement of Reservations and Objections will be of the form "Defs.' R&O Stmt. __".

I.    **Reservations and Objections to Alien Tort Statute ("ATS") Instructions**

A.    **General Reservations and Objections to All ATS Instructions**

This Court does not have subject matter jurisdiction over plaintiffs' ATS claims under 28 U.S.C. § 1350.  (*See* Defs.' Motion to Dismiss Pls.' ATS Claims, *Wiwa*

Docket Nos. 331, 350, 351; *see also* Defs.' Int'l Law Br. 1-14, *Wiwa* Docket No. 303.)[8] Plaintiffs assert no claim for direct liability against defendants in this case.  Plaintiffs cannot bring a claim under the ATS based on indirect liability because there is no civil indirect liability under customary international law.  (*See infra* Part I.C.)  Jurisdiction is lacking under the ATS unless "international law extends the scope of liability for a violation of a given norm to the perpetrator being sued, if the defendant is a private actor such as a corporation or individual".  *Sosa v. Alvarez-Machain*, 542 U.S. 692, 732 n.20 (2004).

Plaintiffs' ATS claims are governed by this standard.  Under the *Sosa* standard, federal courts only have subject matter jurisdiction over a "narrow class" of international law norms.  *Id*. at 729.  Put simply, "federal courts should not recognize private claims under federal common law for violations of any international law norm with less definite content and acceptance among civilized nations than the historical paradigms familiar when [the ATS] was enacted".  *Id*. at 732.  Thus, the scope of claims that are cognizable under the ATS is not co-extensive with the entire corpus of international law.  To the contrary, *Sosa* made clear that federal courts should exercise "judicial caution" and act as "vigilant doorkeep[ers]" in determining whether customary

---

[8] This Court also lacks subject matter jurisdiction over plaintiffs' claims under federal-question jurisdiction, 28 U.S.C. § 1331.  As the Supreme Court noted in *Sosa*, not "every grant of jurisdiction to a federal court carries with it an opportunity to develop common law".  *Sosa v. Alvarez-Machain*, 542 U.S. 692, 731 n.19 (2004).  "Section 1350 was enacted on the congressional understanding that courts would exercise jurisdiction by entertaining some common law claims derived from the law of nations; and we know of no reason to think that federal-question jurisdiction was extended subject to any comparable congressional assumption".  *Id*.

international law provides for a claim that is cognizable under *Sosa*'s stringent standard. *Id*. at 725, 729.

None of plaintiffs' ATS claims for indirect liability is of a universal, specific, and obligatory nature with respect to defendants' actual conduct.  Moreover, plaintiffs have no evidence that any of the defendants violated a norm of international law.  Thus, plaintiffs have failed to carry their burden in proving that this Court has subject matter jurisdiction over their ATS claims and as such, no instructions should be given with respect to plaintiffs' ATS claims.

**B.      Reservations and Objections to Specific ATS Instructions**

**1.      Summary Execution Instruction**

There is no universal, specific and obligatory norm of customary international law for civil indirect liability for summary execution.  Thus, even if the jury finds the Nigerian Government liable for summary execution under the ATS, defendants cannot be held indirectly liable for the alleged conduct of the Nigerian Government under this claim.

Moreover, this claim is not cognizable under the ATS as plaintiffs' reliance on a host of "judicial guarantees" under domestic law, many of which are not clearly defined, does not create a sufficiently definite norm of customary international law that measures up to the paradigmatic norms of the eighteenth century.  (*See* Int'l Law Br. 19-24, 33-35.)

Additionally, the TVPA has displaced plaintiffs' ATS claim for summary execution.  Congress passed the TVPA to implement the Convention Against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment and moot the question

whether a private right of action exists under the ATS for extrajudicial killing.  The

TVPA provides federal courts a "clear mandate" and "unambiguous" basis upon which to

adjudicate federal claims for summary execution.  Plaintiffs, however, have abandoned

any claim for summary execution—or extrajudicial killing—under the TVPA.  (*See id*. at

25-33; *see also* 2/23/09 Order at 7 n.7.)

   This Court has already held in *Kiobel v. Royal Dutch Petroleum Co*., 456

F. Supp. 2d 457, 464-65 (S.D.N.Y. 2006), a case based on the same facts with respect to

this claim, that plaintiffs cannot make out a claim for summary execution against

defendants.  As this Court stated, it was not aware of a single "international authority

establishing the elements of extrajudicial killing".  *Id*. at 465.

   Accordingly, no instruction for summary execution should be given.

## 2.  Crimes Against Humanity Instruction

   There is no universal, specific and obligatory norm of customary

international law for civil indirect liability for crimes against humanity.  Thus, even if the

jury finds the Nigerian Government liable for crimes against humanity under the ATS,

defendants cannot be held liable for the alleged conduct of the Nigerian Government

under this claim.

   Moreover, this claim is not cognizable under the ATS because the

definition and scope of crimes against humanity remains unclear under international law.

Plaintiffs' own sources, such as the statutes of the ICTY and ICTR, and the Rome

Statute, reveal that there is no agreement as to what constitutes "crimes against

humanity".  (*See* Int'l Law Br. 45-52.)

   Accordingly, no instruction for crimes against humanity should be given.

### 3.        Torture Instruction

There is no universal, specific and obligatory norm of customary international law for civil indirect liability for torture.   Thus, even if the jury finds the Nigerian Government liable for torture under the ATS, defendants cannot be held liable for the alleged conduct of the Nigerian Government under this claim.

Moreover, this claim is not cognizable under the ATS because plaintiffs do not allege that defendants administered or committed torture.  *Sosa* distinguished between the person who allegedly administered the torture and the alleged "perpetrator being sued". (*See id*. at 35-37.)

Additionally, the TVPA has displaced plaintiffs' ATS claim for torture and plaintiffs have abandoned any claim for torture under the TVPA.  (*See supra* Part I.B.1; Int'l Law Br. 25-29; 2/23/09 Order at 7 n.7.)

Accordingly, no instruction for torture should be given.

### 4.        Cruel, Inhuman or Degrading Treatment Instruction

There is no universal, specific and obligatory norm of customary international law for civil indirect liability for cruel, inhuman or degrading treatment ("CIDT").  Thus, even if the jury finds the Nigerian Government liable for cruel, inhuman or degrading treatment under the ATS, defendants cannot be held liable for the alleged conduct of the Nigerian Government under this claim.

Moreover, this claim is not cognizable under the ATS because there are "conceptual difficulties" and "problems of definability" with any claim for CIDT.  A proposed prohibition against CIDT is an amorphous rule that does not meet the specificity requirements of *Sosa*.  (*See* Int'l Law Br. at 38-44.)

Additionally, the legislative history of the TVPA compels the rejection of plaintiffs' cruel, inhuman or degrading treatment claim as Congress only executed in part the Convention Against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment when it adopted the TVPA.  Congress chose to create a remedy for torture and extrajudicial killing only, and chose not to create a remedy for CIDT, another subject of the Convention.  (*See id.* at 44-45.)

Accordingly, no instruction for cruel, inhuman or degrading treatment should be given.

### 5.    Arbitrary Arrest and Detention Instruction

There is no universal, specific and obligatory norm of customary international law for civil indirect liability for arbitrary arrest and detention.  Thus, even if the jury finds the Nigerian Government liable for arbitrary arrest and detention under the ATS, defendants cannot be held liable for the alleged conduct of the Nigerian Government under this claim.

Moreover, this claim is not cognizable under the ATS because the Court in *Sosa* found that any consensus concerning arbitrary arrest and detention as an international norm was "at a high level of generality" only.  (*See id*. at 52-57.)

Accordingly, no instruction for arbitrary arrest and detention should be given.

### 6.    Violations of the Rights to Life, Liberty and Security of Person, and Peaceful Assembly and Association Instruction

There is no universal, specific and obligatory norm of customary international law for civil indirect liability for violations of the rights to life, liberty and

security of person, and peaceful assembly and association.  Thus, even if the jury finds

the Nigerian Government liable for violations of the rights to life, liberty and security of

person, and peaceful assembly and association under the ATS, defendants cannot be held

liable for the alleged conduct of the Nigerian Government under this claim.

Moreover, this claim is not cognizable under the ATS because plaintiffs'

claim is not "sufficiently definite" under the *Sosa* standard as it is based on an

amalgamation of civil and political rights.  (*See id*. at 57-62.)

This Court has already held in *Kiobel v. Royal Dutch Petroleum Co*., 456

F. Supp. 2d 457, 467 (S.D.N.Y. 2006), a case based on the same facts with respect to this

claim, that plaintiffs cannot make out a claim for violations of the rights to life, liberty

and security of person, and peaceful assembly and association against defendants.  This

Court held that "'[t]here is no particular or universal understanding of the civil and

political rights' covered by Plaintiffs' claim, and thus, pursuant to *Sosa*, these 'rights' are

not actionable under the ATS".  *Id*.

Accordingly, no instruction for violations of the rights to life, liberty, and

security of person, and peaceful assembly should be given.

> C.   **Reservations and Objections to Plaintiffs' Theories of Indirect
> Liability for ATS Claims**

Plaintiffs assert no claim for direct liability against defendants here.

Rather, "[p]laintiffs' claims are essentially claims for secondary liability, *i.e.*, claims that

Defendants 'facilitated,' 'conspired with,' 'participated in,' 'aided and abetted,' or

'cooperated with' government actors or government activity in violation of international

law".  *Kiobel v. Royal Dutch Petroleum Co.*, 456 F. Supp. 2d 457, 463 (S.D.N.Y. 2006).

Plaintiffs' claims are that Royal Dutch and Shell Transport are somehow liable for

44

conduct of SPDC, a wholly owned Nigerian subsidiary of SPCo.  The claims against

Royal Dutch and Shell Transport depend on disregarding the corporate form entirely.

Plaintiffs have no viable theory for imputing SPDC's conduct to Royal Dutch or Shell

Transport, much less for imputing the conduct of the Nigerian Government to them.

Thus, this Court lacks jurisdiction of all of plaintiffs' ATS claims because no norm of

customary international law proscribes any acts taken by the "perpetrator[s] being sued".[9]

*Sosa v. Alvarez-Machain*, 542 U.S. 692, 732 n.20 (2004).  Because plaintiffs have no

evidence that Royal Dutch, Shell Transport or Mr. Anderson have violated any

international law norm, this Court lacks subject matter jurisdiction over these claims.

(*See* Defs.' Motion to Dismiss Pls.' ATS Claims.)

        Plaintiffs assert the following theories of indirect liability, all of which are

flawed:

        With respect to the corporate defendants, plaintiffs first seek to hold SPDC

indirectly liable for the alleged unlawful acts of the Nigerian Government under one of

---

[9] Indeed, international law does not recognize the imposition of civil indirect liability against corporations under any theory.  No treaty or convention permits the imposition of civil indirect liability against corporations under international law.  *See, e.g.*, Statute of the International Criminal Tribunal for the former Yugoslavia, art. 6; Statute of the International Criminal Tribunal for Rwanda, art. 5; Rome Statute of the International Criminal Court, art. 25, July 17, 1998, 37 I.L.M. 1999.  In fact, no international tribunal has ever imposed *direct* liability on a corporation for violating international law.  *See, e.g.*, *United States v. Krauch (The I.G. Farben Case)*, 8 Trials of War Criminals Before the Nuremberg Military Tribunals at 1113, 1127, 1170.  Moreover, no international tribunal has jurisdiction to adjudicate corporate liability for the types of claims that plaintiffs raise in this case.  As Judge Korman noted in *Khulumani*, "[t]here is a significant basis for distinguishing between personal and corporate liability", and the "sources evidencing the relevant norms of international law at issue plainly do not recognize [corporate] liability".  *Khulumani v. Barclay Nat'l Bank Ltd.*, 504 F.3d 254, 321-22 (2d Cir. 2007) (Korman, J., concurring in part, dissenting in part).

the following theories:  (1) aiding and abetting; (2) agency; (3) conspiracy; (4) ratification; (5) joint venture; (6) instigation or inducement of wrongful acts; (7) reckless disregard; (8) joint enterprise; and (9) inherent danger to others.  Plaintiffs then seek to hold the corporate defendants liable for SPDC's alleged conduct under one of the following theories:  (1) piercing the corporate veil; (2) aiding and abetting; (3) agency; (4) conspiracy; and (5) ratification.

With respect to Mr. Anderson, plaintiffs seek to hold Mr. Anderson liable for the conduct of the Nigerian Government under one of four theories:  (1) aiding and abetting; (2) conspiracy; (3) instigation or inducement of wrongful acts; and (4) reckless disregard.

These theories fail to meet *Sosa*'s stringent requirements.  *Sosa* recognized that federal courts should not blur the line between indirect liability in the criminal and civil context:  "[t]he creation of a private right of action raises issues beyond the mere consideration whether underlying primary conduct should be allowed or not, entailing, for example, a decision to permit enforcement without the check imposed by prosecutorial discretion".  542 U.S. at 727.  This distinction between criminal and civil procedure is another "good reason[] for a restrained conception of the discretion a federal court should exercise in considering new causes of action" for violations of international law.  *Id*. at 725.  Civil indirect liability is not a norm that is defined with a specificity comparable to the features of the 18th-century paradigms and that is universally accepted by the civilized world.  *Id*. at 732.

Moreover, many of these theories of liability simply do not exist or are inapplicable here under international law, which governs here. *Sosa*, 542 U.S. at 732 n.20.

Despite the fact that any theory of indirect liability must find its source from international law as it is "*international law* [that] extends the scope of liability for a violation of a given norm to the perpetrator being sued, if the defendant is a private actor such as a corporation or individual", *Sosa*, 542 U.S. at 732 n.20 (emphasis added), plaintiffs seek to hold defendants liable under these theories of indirect liability without offering this Court any rationale as to what source of law provides the basis for those theories.  Instead, plaintiffs seek to couple their substantive ATS claims of customary international law with theories of indirect liability based on international law, federal common law, and/or New York and California law.  While plaintiffs previously have stated that "the primary source for rules of liability is well-established rules of federal common law" (Pls.' Int'l Law Br. 46), and that "federal common law may incorporate international law where appropriate" (*id*.), plaintiffs have never previously argued that state law can supply rules of liability for ATS claims.  Plaintiffs' proposed jury instructions, however, seek to do just that.  Several of plaintiffs' theories of indirect liability rely on a combination of New York and federal common law (including Ninth Circuit law) (*i.e*., (2) agency, and (5) joint venture), others rely on New York law in combination with international law (*i.e*., (6) instigation or inducement); and still others rely on New York law in combination with both federal common law and international law (*i.e*., (1) aiding and abetting, and (3) conspiracy).  One of plaintiffs' proposed theories of indirect liability is based *entirely* on New York law (*i.e*., (9) inherent danger

to other), and another is based on both California and New York state law (*i.e.*, (4) ratification).  And even though plaintiffs have disavowed any reliance on Nigerian law, they still cite to it when it serves their ends (*i.e.*, (8) joint enterprise).  *Sosa* dicates that international law must supply the substantive law for any theory of indirect liability.

Under international law, plaintiffs' theories of (4) ratification; (5) joint venture; (6) instigation or inducement of wrongful acts; (7) reckless disregard; (8) joint enterprise; and (9) inherent danger do not exist.  (*See, e.g.*, Int'l Law Br. 66, 76 n.49.)  And with respect to (3), in order to prove conspiracy under international law, plaintiffs must first prove that the Nigerian Government committed genocide or waged aggressive war.  Because plaintiffs have not pleaded either of those two claims, plaintiffs do not have a claim for conspiracy under international law.  *Sosa*, 542 U.S. at 732 n.20; *Presbyterian Church of Sudan v. Talisman Energy*, 453 F. Supp. 2d 633, 663 (S.D.N.Y. 2006).

Moreover, even if this Court were to recognize plaintiffs' theories of indirect liability, two of those theories, (8) joint enterprise and (9) inherent danger to others, apply only to negligence claims, and as such, they would be inapplicable to plaintiffs' ATS claims.  *See, e.g.*, *Fairbairn v. State*, 107 A.D.2d 864, 864-65 (N.Y. App. Div. 1985) (joint enterprise); Restatement [Second] of Torts § 427 (inherent danger); *Rosenberg v. Equitable Life Assurance Soc.*, 79 N.Y.2d 663, 668-69 (N.Y. 1992) (inherent danger).

II. **Reservations and Objections to State Law Instructions**

    A. **General Reservations and Objections to All State Law Instructions**

This Court does not have subject matter jurisdiction over plaintiffs' ATS claims, and thus there is no supplemental jurisdiction over plaintiffs' state law claims under 28 U.S.C. § 1367. *See Arbaugh v. Y&H Corp.*, 546 U.S. 500, 514 (2006).

Even if there were supplemental jurisdiction over plaintiffs' state law claims, those claims are governed by Nigerian law. Under New York choice of law, Nigerian law provides the applicable substantive law for plaintiffs' state law claims because (1) the alleged injuries occurred in Nigeria, (2) the alleged conduct that caused the alleged injuries occurred in Nigeria, (3) the plaintiffs are Nigerian citizens, and (4) Nigeria has the most significant relationship to plaintiffs and the alleged injuries. *See* Restatement (Second) of Conflict of Laws § 145; *Cooney v. Osgood Mach., Inc.*, 81 N.Y.2d 66, 72 (1993).

    B. **Declarations, Reservations and Objections to Specific State Law Instructions**

        1. **Heightened Standard of Proof for Assault and Battery Instructions**

Under Nigerian law, plaintiffs must prove their claims for assault and battery beyond a reasonable doubt, not simply by a preponderance of the evidence. *Okuarume v. Obabokor*, [1965] N.S.C.C. 286, 286-87; Nigerian Evidence Act (1990), Cap. 112, § 138(1).

        2. **Intentional Infliction of Emotional Distress Instruction**

There is no cause of action under Nigerian law for intentional infliction of emotional distress. *See Bowoto v. Chevron Corp.*, No. C 99-02506 SI, 2006 WL

2455761, at *8 (N.D. Cal. Aug. 22, 2006) (finding that Nigerian law does not recognize intentional infliction of emotional distress).  Thus, this Court should not give the jury an instruction related to this claim.[10]

### 3.    Negligent Infliction of Emotional Distress Instruction

There is no cause of action under Nigerian law for negligent infliction of emotional distress.  *See Bowoto v. Chevron Corp.*, No. C 99-02506 SI, 2006 WL 2455761, at *8 (N.D. Cal. Aug. 22, 2006) (finding that Nigerian law does not recognize negligent infliction of emotional distress).  Thus, this Court should not give the jury an instruction related to this claim.[11]

### C.    Reservations and Objections to Plaintiffs' Theories of Indirect Liability

Although Nigerian law does not recognize plaintiffs' theories of indirect liability for (8) joint enterprise and (9) inherent danger, if this Court were to adopt plaintiffs' theories, they would only apply to plaintiffs' negligence claims, not any other claim.  *See supra* Part I.C.  However, because plaintiffs contend that SPDC was itself negligent, thereby bypassing the first step of indirect liability of holding SPDC liable for the Nigerian Government's conduct, these two theories would not apply to the negligence instruction because plaintiffs do not contend that their (8) and (9) theories of indirect liability apply to the alleged relationship between SPDC and defendants.

---

[10] Defendants have relied upon New York law in drafting a proposed jury instruction for intentional infliction of emotional distress only to the extent this Court finds that such an instruction is proper.

[11] Defendants have relied upon New York law in drafting a proposed jury instruction for negligent infliction of emotional distress only to the extent this Court finds that such an instruction is proper.

### III.   Reservations and Objections to RICO Instructions

This Court does not have subject matter jurisdiction over plaintiffs' claim under the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1964(c). (*See* Defs.' Motion to Dismiss Pls.' RICO Claim, *Wiwa* Docket Nos. 309, 328.)  This case involves alleged harms committed by Nigerians in Nigeria allegedly suffered by foreign plaintiffs, with no significant or material effects in the United States.  *See, e.g.*, *North South Fin. Corp. v. Al-Turki*, 100 F.3d 1046, 1052 (2d Cir. 1996).  Accordingly, this Court should not give the jury any instruction with respect to plaintiffs' RICO claim.

### IV.   Reservations and Objections to Punitive Damages Instruction

International law governs the substantive principles in this case.  *See Sosa*, 542 U.S. at 732 n.20.  International law does not recognize punitive damages.  *Velásquez Rodríguez Case*, Inter-Am. C.H.R., Report No. 7/89, ¶ 38 (July 21, 1989); International Law Commission, Commentaries to the Draft Articles on Responsibility of States for Internationally Wrongful Acts, 53rd Sess. 235, 245-46 & n.549, 279, (2001) ("[T]he award of punitive damages is not recognized in international law even in relation to serious breaches of obligations arising under peremptory norms."); *Re Letelier and Moffitt*, (1992) I.L.R., vol. 88, 727, at 741 ("It should firstly be reiterated that international law has not accepted as one of its principles the concept of punitive damages.").

Moreover, an instruction on punitive damages is improper in this case because no U.S. court that has awarded punitive damages to a plaintiff under the ATS has done so against a private actor or corporation based on theories of indirect liability.

Thus, the jury should be instructed that they may *not* award punitive damages for plaintiffs' ATS claims.

**PLAINTIFFS' RESPONSE**

**V.      Response to defendants' general reservations and objections re ATS claims.**

As a general matter, most of defendants' "general reservations and objections" set forth below have been raised by motion, and are appropriately addressed there.  For the issues that have not been raised by motion, most of them probably should have been; this is not the best vehicle for briefing these issues.  Nonetheless, plaintiffs briefly respond to each argument in order.

**A.      General Reservations and Objections to All ATS Instructions**

The issue of ATS jurisdiction has been extensively briefed and need not be re-briefed here.  Plaintiffs' position is set forth in their International Law Brief and Reply and their Subject Matter Jurisdiction (SMJ) Opposition Brief.  In brief, various forms of indirect liability are available for ATS claims under both customary international law and federal common law.  *See, e.g.*, Int'l Law Br. at 49-60; Int'l Law Reply at 36-41.  Federal common law, not international law, applies to indirect liability in ATS cases.  Int'l Law Br. at 46-48, Int'l Law Reply at 29-34.  Moreover, ATS aiding and abetting liability is explicitly authorized in the Second Circuit.  *See* SMJ Opp. at 4-5.

**B.      Reservations and Objections to Specific ATS Instructions**

**1.      Summary Execution Instruction**

As noted above, indirect liability is available under the ATS.  *See, e.g.*,
Int'l Law Br. at 46-60; Int'l Law Reply at 29-41; SMJ Opp. at 4-5.  As for the
actionability of the norm against extrajudicial execution, the *Sosa* standard only requires
courts to consider whether alleged conduct clearly falls within a norm, not whether every
aspect of that norm is fully defined and agreed upon.  Int'l Law Br. at 10.   Extrajudicial
execution is actionable under the *Sosa* standard.  Int'l Law Br. at 11-14; Alston Decl. at
25.  The judicial guarantees issue in particular has been set out at length.  *See* Int'l Law
Br. at 14-28; Alston Decl.

Defendants' argument regarding TVPA preemption has already been
rejected by this Court.  *See* 2002 U.S. Dist. LEXIS 3293 at *11–13; *see also Kadic v.
Karadzic,* 70 F.3d 232, 241 (2d. Cir. 1995) ("The scope of Alien Tort Act remains
undiminished by enactment of the Torture Victim Act."); *Flores v. Southern Peru Copper
Corp.*, 414 F.3d 233, 247 (2d Cir. 2003) (recognizing that "the TVPA reaches conduct
that may also be covered by the ATCA").

Plaintiffs have already addressed the relevance of proceedings in the
*Kiobel* case.  Int'l Law Br. at 3-5.

**2.      Crimes Against Humanity Instruction**

As noted above, indirect liability is available under the ATS.  *See, e.g.*,
Int'l Law Br. at 46-60; Int'l Law Reply at 29-41; SMJ Opp. at 4-5.  As for the
actionability of crimes against humanity, every post-*Sosa* court has found this claim to be
actionable, *see* Int'l Law Br. at 37-38; *see also id.* at 38-44; the alleged disagreement over

definition of crimes against humanity is not over the core elements of the norm, but merely reflects jurisdictional limits. Int'l Law Reply at 19.

### 3. Torture Instruction

As noted above, indirect liability is available under the ATS. *See, e.g.*, Int'l Law Br. at 46-60; Int'l Law Reply at 29-41; SMJ Opp. at 4-5. Moreover, international and ATS sources explicitly provide for secondary liability for torture. *See* Int'l Law Reply at 17-19.

Defendants' argument regarding TVPA preemption has already been rejected by this Court. *See* 2002 U.S. Dist. LEXIS 3293 at *11–13; *see also Kadic v. Karadzic,* 70 F.3d 232, 241 (2d. Cir. 1995) ("The scope of Alien Tort Act remains undiminished by enactment of the Torture Victim Act."); *Flores v. Southern Peru Copper Corp.*, 414 F.3d 233, 247 (2d Cir. 2003) (recognizing that "the TVPA reaches conduct that may also be covered by the ATCA").

### 4. Cruel, Inhuman or Degrading Treatment Instruction

As noted above, indirect liability is available under the ATS. *See, e.g.*, Int'l Law Br. at 46-60; Int'l Law Reply at 29-41; SMJ Opp. at 4-5. As for the actionability of cruel, inhuman or degrading treatment ("CIDT"), this norm meets the *Sosa* standard. *See* Int'l Law Br. at 30-33, Int'l Law Reply at 23-25. Regarding the alleged definability problem, the *Sosa* standard only requires courts to consider whether alleged conduct clearly falls within a norm, not whether every aspect of that norm is fully defined and agreed upon.  Int'l Law Br. at 10.

Defendants' argument regarding TVPA preemption has already been rejected by this Court. *See* 2002 U.S. Dist. LEXIS 3293 at *11–13; *see also Kadic v.*

*Karadzic,* 70 F.3d 232, 241 (2d. Cir. 1995) ("The scope of Alien Tort Act remains undiminished by enactment of the Torture Victim Act."); *Flores v. Southern Peru Copper Corp.*, 414 F.3d 233, 247 (2d Cir. 2003) (recognizing that "the TVPA reaches conduct that may also be covered by the ATCA").  The idea that the TVPA preempts even claims not mentioned in the TVPA, such as CIDT, is not supported by any authority.

### 5.      Arbitrary Arrest and Detention Instruction

As noted above, indirect liability is available under the ATS.  *See, e.g.,* Int'l Law Br. at 46-60; Int'l Law Reply at 29-41; SMJ Opp. at 4-5.  As for the actionability of arbitrary arrest and detention, this has been extensively briefed.  *See* Int'l Law Br. at 44-46, Int'l Law Reply at 21-22. *Sosa* specifically found that some arbitrary arrest and detention could rise to the level of customary international law violation.  *See* Int'l Law Reply at 22-23.

### 6.      Violations of the Rights to Life, Liberty and Security of Person, and Peaceful Assembly and Association Instruction

As noted above, indirect liability is available under the ATS.  *See, e.g.,* Int'l Law Br. at 46-60; Int'l Law Reply at 29-41; SMJ Opp. at 4-5.  As for the actionability of violations of the rights to life, liberty and security of person, and peaceful assembly and association, this question has been extensively briefed.  *See* Int'l Law Br. at 34-37, Int'l Law Reply at 27-29, Roht-Arriza Decl.  Plaintiffs have already addressed the relevance of the *Kiobel* decision.  Int'l Law Br. at 34.

### C.      Reservations and Objections to Plaintiffs' Theories of Indirect Liability for ATS Claims

Defendants' argument that the claims against the corporate defendants depends on disregarding their corporate form is highly misleading and ignores several

theories of liability that do not depend on disregarding the corporate form: agency, joint venture, conspiracy, joint enterprise, and ratification.  As noted above, indirect liability is available under the ATS.  *See, e.g.*, Int'l Law Br. at 46-60; Int'l Law Reply at 29-41; SMJ Opp. at 4-5.

Defendants' suggestion that their status as corporations somehow changes this is also contrary to caselaw.  No court has found that a corporation's liability under the ATS is distinct from anyone else's liability.  Courts have allowed numerous cases against corporations to proceed and, in at least one case, have awarded damages against a corporation under the ATS.  *See Rodriguez-Licea v. Curacao Drydock  Co.*, 584 F. Supp. 2d 1355 (S.D. Fla. 2008) (awarding a total of $50 million compensatory and  $30 million punitive damages against a corporation); *see also, e.g.*, *Abdullahi v. Pfizer, Inc.*, No. 05-4863-cv, 2009 U.S. App. LEXIS 1768, ___ F.3d ___ (2d Cir. January 30, 2009) (allowing ATS case to proceed against corporation); *Romero v. Drummond Co.*, 552 F.3d 1303, 1315 (11th Cir. 2008) ("The text of the Alien Tort Statute provides no express exception for corporations . . . ."); *In re Agent Orange Prod. Liab. Litig.*, 373 F. Supp. 2d 7, 52-59 (E.D.N.Y. 2005) (concluding that corporations could be liable in a civil action brought under the ATS for a violation of international law and that a claim for aiding and abetting liability was cognizable under the statute).

With respect to defendants' challenges to the specific theories of liability, defendants' confuse the law cited as the "source" for the language of the jury instruction with the basis for the instruction under federal common law, international law, New York law, Nigerian law, or all of these.  Plaintiffs do not argue that state law alone supplies the rules of ATS liability.  Instead, state common law theories of liability are often reflective

of general federal common law rules, unless they represent some idiosyncratic rule of that particular state.  Defendants do not demonstrate that any of the theories here are idiosyncratic to New York; all of them are generally applicable theories of civil tort liability.  Plaintiffs use Ninth Circuit instructions as a source for language where those instructions are reflective of general federal law and present the issues in a straightforward manner; defendants have not shown that "Ninth Circuit law" differs from general federal law.

With respect to agency and joint venture, plaintiffs rely on a combination between New York law and federal common law because those are the applicable sources of law here.  No case supports referencing international law with respect to agency; *Presbyterian Church of Sudan v. Talisman Energy, Inc.*, 453 F. Supp. 2d 633 (S.D.N.Y. 2006), on which defendants have relied, suggested that the choice on agency questions would be between local law and foreign law, not international law.  *Id.* at 681-83, 687-88. Defendants themselves have relied on Nigerian law, without citing any international sources as to agency.  *See* Defs.' Memo. on Issues of Int'l Law at 6.

With respect to instigation/inducement, this is a general common law principle as well.  *See* Restatement (2d) of Torts § 45A & cmt. a ("One who instigates or participates in the unlawful confinement of another is subject to liability to the other for false imprisonment. . . . The general principle stated in this Section is applicable to all torts. It receives special statement here because of the frequency with which the question has arisen in cases of false arrest.").  A similar instigation instruction was given for all tort claims (under ATS, state, and Nigerian law) in *Bowoto v. Chevron Corp.  See Bowoto v. Chevron Corp.*, No. C 99-02506 SI, Instructions to Jury (Final as Amended –

11/25/08) at 42 (N.D. Cal. Nov. 25, 2008) ("Responsibility of [Chevron Nigeria] for acts of Nigerian security forces—Instigation or Inducement").

With respect to aiding and abetting and conspiracy, defendants can have no quarrel with the fact that plaintiffs have relied on international law in addition to federal common law and New York law for their sources.  Nor is defendants' contention that conspiracy is only recognized in international law in the context of waging war and genocide; as argued elsewhere, they confuse conspiracy as an inchoate offense with conspiracy as a mode of liability.  Int'l Law Reply at 38-40.

With respect to the "inherent danger to others" instruction, again this is a general common law theory.  *See, e.g.*, Restatement (2d) of Torts § 427  ("One who employs an independent contractor to do work involving a special danger to others which the employer knows or has reason to know to be inherent in or normal to the work, or which he contemplates or has reason to contemplate when making the contract, is subject to liability for physical harm caused to such others by the contractor's failure to take reasonable precautions against such danger.").  These are basic hornbook principles of tort law, and as such equally applicable to ATS claim as other tort claims.  A similar instigation instruction was given for all tort claims (under ATS, state, and Nigerian law) in *Bowoto v. Chevron Corp. See Bowoto v. Chevron Corp.*, No. C 99-02506 SI, Instructions to Jury (Final as Amended – 11/25/08) at 42-43 (N.D. Cal. Nov. 25, 2008) ("Responsibility of [Chevron Nigeria] for acts of Nigerian security forces—Special Risk of Harm").

With respect to ratification, there can be little doubt that this is a general common law principle.  *See generally* Restatement (3d) of Agency §§ 4.01-4.08.  A

similar ratification instruction was given for all tort claims (under ATS, state, and Nigerian law) in *Bowoto v. Chevron Corp.  See Bowoto v. Chevron Corp.*, No. C 99-02506 SI, Instructions to Jury (Final as Amended – 11/25/08) at 42 (N.D. Cal. Nov. 25, 2008) ("Responsibility of [Chevron Nigeria] for acts of Nigerian security forces—Ratification"); *see also Bowoto*, 312 F. Supp. 2d 1229 (N.D. Cal. 2004) (holding that "plaintiffs have an independent claim under their ratification theory that their subsequent ratification of [Chevron Nigeria's] actions created an agency. . . . Ratification is demonstrated through knowing acceptance after the fact by the principal of an agent's actions.").

Finally, as for joint enterprise, plaintiffs cite Nigerian law as a source for an alternative instruction should the Court decide that it is the relevant source of law.

Defendants' final argument is that joint enterprise and inherent danger to others apply only to negligence theories.  This is not correct.  In *Fairbairn v. State*, 107 A.D.2d 864 (N.Y. App. Div. 1985), the court recognized that "the negligence of one member [of the enterprise] may be imputed to the others" because the plaintiffs' claim in that case was "for negligence," *id.* at 865; there is no indication that this theory does not apply more broadly.

As for inherent danger, defendants misconstrue the law.  *Rosenberg v. Equitable Life Assurance Soc.*, 79 N.Y.2d 663 (N.Y. 1992), cited by defendants, expressly holds that there is "vicarious liability when inherently dangerous work is delegated to an independent contractor"; again it was the negligence of the contractor that was at issue in the case, but there is no indication that the scope of liability is that limited. *Id.* at 668.  Defendants cite no cases rejecting liability for torts other than negligence;

while the issue rarely comes up in the caselaw, courts have found held that liability for an independent contractor's torts in the course of inherently dangerous work extends to intentional torts.  For example, in *Woodson v. Rowland*, 329 N.C. 330, 352 (1991), the court found that the independent subcontractor's willful failure to take safety precautions was an intentional tort, and attributed liability to the general contractor that hired the subcontractor based on the inherent danger doctrine.  *See also Ulmen v. Schwieger*, 92 Mont. 331, 345 (1932) (noting that a situation "where the work to be done is intrinsically dangerous or hazardous" is an exception to the general rule that "an employer is not liable for the *wrongful or negligent* acts of an independent contractor" (emphasis added)); *Saiz v. Belen Sch. Dist.*, 113 N.M. 387, 395 (1992) (holding that "when an employer hires an independent contractor to do work that the law recognizes as likely to create a peculiar risk of harm, the employer is directly responsible if reasonable precautions are not taken against the risk. . . . Proof of liability or even negligence of the independent contractor is not an essential element of the employer's liability.").

In short, all of plaintiffs' theories are well-supported under any applicable law.

## VI. Response to defendants' general reservations and objections re state law claims.

In order, plaintiffs briefly respond to defendants' arguments made below.

### A. General Reservations and Objections to All State Law Instructions

As argued elsewhere, the Court has subject matter jurisdiction over the ATS claims and therefore also has supplemental jurisdiction.

The claims are not governed by Nigerian law, as set forth above.

**B.** **Declarations, Reservations and Objections to Specific State Law Instructions**

**1.** **Heightened Standard of Proof for Assault and Battery Instructions**

As set forth above, Nigerian law does not apply to the burden of proof here. New York's preponderance of the evidence standard applies.

**2.** **Intentional Infliction of Emotional Distress Instruction**

As set forth above, Nigerian treatises, English cases, and Nigerian cases all support the existence of claims for intentional and negligent infliction of emotional distress under Nigerian law. Defendants' sole source for their contrary contention is *Bowoto v. Chevron Corp.*, No. C 99-02506 SI, 2006 WL 2455761 (N.D. Cal. Aug. 22, 2006). But that order does not really support defendants' position. In it, Judge Illston noted:

> Defendants claim that Nigerian law differs from California law because Nigerian law does not recognize a cause of action for intentional infliction of emotional distress, [and] negligent infliction of emotional distress . . . . In support of this assertion, defendants have submitted a declaration from Anthony I. Ikemefuna Idigbe, Esq., SAN, in which Idigbe states that "[a] search of applicable Nigerian case law in the appellate and Supreme Courts failed to reveal any cases that have recognized a cause of action for Intentional Infliction of Emotional Distress [or] Negligent Infliction of Emotional Distress . . . ." Idigbe Decl., ¶ 11. In addition, plaintiff's expert on Nigerian law has admitted that he knows of no case in which the Supreme Court of Nigeria has recognized a cause of action for intentional infliction of emotional distress.
> Plaintiffs argue that these statements are merely unsupported assertions, and are insufficient to meet defendants' burden. Given that plaintiffs have introduced no evidence that Nigerian law recognizes the above causes of action, however, the Court finds that defendants have established that Nigerian law does not recognize intentional infliction of emotional distress, negligent infliction of emotional distress, civil conspiracy, and loss of consortium.

*Id.* at *8 (footnote omitted). Thus the *Bowoto* court only found that Nigerian law did not support these claims based on one unsupported expert affidavit—which is not in evidence here—and based on the fact that the plaintiffs there "introduced not evidence that

Nigerian law recognizes" these causes of action.  *Id.*  By contrast, in this case there are no expert affidavits questioning the viability of these claims, and plaintiffs have put forth substantial evidence that these claims do exist in Nigerian law.  *Bowoto* provides no basis to reject them.

### 3.  Negligent Infliction of Emotional Distress Instruction

See plaintiffs' argument regarding intentional infliction of emotional distress in the preceding section.

### C.  Reservations and Objections to Plaintiffs' Theories of Indirect Liability

Defendants claim that Nigerian law does not recognize theories of joint enterprise and inherent danger, but cite no sources for this proposition.  Indeed, plaintiffs have cited Nigerian law concerning joint enterprise, and there is no reason to believe that Nigeria, as a common law jurisdiction, would not follow a similar rule regarding inherent danger; defendants have pointed to no sources rejecting such a rule.  As for the argument that these theories apply only to negligence, see Part IV.C, above.

### VII.  Response to Defendants' Reservations and Objections to RICO Instructions.

Plaintiffs' position on RICO jurisdiction has been made amply clear in the RICO briefing and need not be repeated here.

### VIII.  Response to Defendants' Reservations and Objections to Punitive Damages Instructions.

Defendants' objections regarding punitive damages under the ATS misapprehends both international law and ATS practice.

Defendants claim that international law does not recognize punitive damages. But each of the sources they cite applies only to *state responsibility*, suggesting that international law does not support the award of punitive damages in a complaint against a state. These sources do not address civil liability in any form. From the very first ATS case involving human rights abuses, *Filartiga v. Pena-Irala*, courts in ATS cases have routinely awarded punitive damages. *See, e.g.*, *Filartiga*, 577 F. Supp. 860, 867 (E.D.N.Y. 1984); *Todd v. Panjaitan*, No. CV-92-12255, 1994 WL 827111 (D. Mass. Oct. 26, 1994); *Xuncax v. Gramajo*, 886 F. Supp. 162 (D. Mass. 1995); *Doe v. Constant*, 04 Civ. 10108 (S.D.N.Y. 2006); *Martinez-Baca v. Suarez-Mason*, No. C-87-2057 (N.D. Cal. Apr. 22, 1988); *Mushikiwabo v. Barayagwiza*, No. 94 Civ. 3627, 1996 U.S. Dist. LEXIS 4409 (S.D.N.Y. Apr. 9, 1996); *Tachiona v. Mugabe*, 234 F. Supp. 2d 401, 441 (S.D.N.Y. 2002), *overruled on other grounds*, 386 F.3d 205 (2d Cir. 2004). Rather than concluding that international law prohibits punitive damages, these cases, from *Filartiga* onward, have concluded that punitive damages are especially appropriate to remedy human rights violations where the perpetrators have not been criminally prosecuted, despite the lack of a punitive damages tradition in state responsibility cases:

> [B]ecause, as the record establishes, Paraguay will not undertake to prosecute Pena for his acts, the objective of the international law making torture punishable as a crime can only be vindicated by imposing punitive damages.
>
> It is true, as plaintiffs concede, that damages designated punitive have rarely been awarded by international tribunals. As explained in M. Whiteman, Damages in International Law 716-17 (1937), the international law of damages has developed chiefly in the resolution of claims by one state on behalf of its nationals against the other state, and the failure to assess exemplary damages as such against a respondent government may be explained by the absence of malice or mala mens on the part of an impersonal government. Here Pena and not Paraguay is the defendant. There is no question of punishing a sovereign state or of attempting to hold the people of that state liable for a governmental act in which they played no part.

Moreover, there is some precedent for the award of punitive damages in tort even against a national government. In *I'm Alone (Canada v. United States)*, U.N. Rep. Int. Arb. Awards, vol. 3, at 1609, the American and Canadian claims Commissioners recommended, in addition to compensatory damages, payment of $25,000 by the United States to Canada for intentionally sinking a Canadian ship. In *de Letelier v. Republic of Chile*, 502 F. Supp. 259, 266, 267 (D.D.C. 1980), the court awarded $2,000,000 in punitive damages against the Republic of Chile and various of its employees to the survivors and personal representatives of the former Chilean Ambassador to the United States and a passenger in his car, both killed by the explosion of a bomb. While the court imposed the damages under domestic laws, it mentioned that the "tortious actions" proven were "in violation of international law." *Id.* at 266.

Where the defendant is an individual, the same diplomatic considerations that prompt reluctance to impose punitive damages are not present. The Supreme Court in dicta has recognized that punishment is an appropriate objective under the law of nations . . . .

This court concludes that it is essential and proper to grant the remedy of punitive damages in order to give effect to the manifest objectives of the international prohibition against torture.

*Filartiga*, 577 F. Supp. at 864-65.

Defendants' second argument, that "no U.S. court that has awarded punitive damages to a plaintiff under the ATS has done so against a private actor or corporation based on theories of indirect liability," is both irrelevant and incorrect. Irrelevant, because defendants cite no ATS case in which a court has *rejected* punitive damages against a private actor for indirect liability; defendants may simply have chosen to define this issue too narrowly to find a precedent. They could just as easily say that "no U.S. court has awarded punitive damages under the ATS against a Dutch-English conglomerate," and they would be correct, but that would not be a reason for refusing to do so here.

Perhaps more importantly, however, the argument is incorrect. In *Doe v. Karadzic*, No. 93 Civ. 0878 (PKL), 2001 U.S. Dist. LEXIS 12928 (S.D.N.Y. August 28, 2001), the court noted that the jury had awarded "approximately $ 4.5 billion in

compensatory and punitive damages" against Radovan Karadzic, the Bosnian Serb leader, "for acts of genocide, including murder, rape, torture, and other torts, committed in Bosnia-Herzegovina by individuals under [his] command and control." *Id.* at*1-2. Command responsibility is, of course a theory of indirect liability; Karadzic did not pull the trigger himself.  Nor was Karadzic a public official; as the court noted, "Plaintiffs alleged that Karadzic acted in an official capacity as either the titular head of Srpska or in collaboration with the government of Bosnia-Herzegovina and its dominant constituent republic, Serbia." *Id.* at *2.  Indeed, *Kadic v. Karadzic*, 70 F.3d 232 (2d Cir. 1995), was the seminal case in which the Second Circuit confirmed that Karadzic "may be found liable for genocide, war crimes, and crimes against humanity in his private capacity," and may be found liable "for other violations in his capacity as a state actor," *id.* at 236, based in part on the theory that he "act[ed] in concert with Yugoslav officials or with significant Yugoslavian aid." *Id.* at 245.  Thus, courts have awarded punitive damages under the ATS against private actors based on indirect liability.  *See also See, e.g. Chavez v. Carranza*, No. 06-6234, ___ F.3d ___, 2009 U.S. App. LEXIS 5556, *26-27 (6th Cir. Mar. 17, 2009) (affirming command responsibility instructions after jury award of $1 million in punitive damages).

Dated:      April 1, 2009
            New York, New York

CRAVATH, SWAINE & MOORE LLP

by _____

            Rory O. Millson
            Rowan D. Wilson
            Thomas G. Rafferty

            825 Eighth Avenue
            New York, NY 10019
            (212) 474-1000

*Attorneys for Defendants*

CENTER FOR CONSTITUTIONAL RIGHTS

by _____

            Judith Brown Chomsky    *with permission*
            Jennifer M. Green

            666 Broadway, 7th Floor
            New York, NY 10012
            (215) 782-8367

*Attorneys for Wiwa Plaintiffs*